UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDRIA (SIAN) WRIGHT,              Case No.

    Plaintiff,                                    Hon.

v.

MANPOWERGROUP US INC.,

    Defendant.

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (PP85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com
Kara@hurwitzlaw.com

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Alexandria (Sian) Wright ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, hereby alleges as follows:

## INTRODUCTION

1.    This is a civil action for money damages, liquidated damages, costs, attorneys' fees, and other relief against Defendant ManpowerGroup US Inc., ("Defendant").

2.    Plaintiff's claims arise out of Defendant's multiple violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., including misclassifying Plaintiff as an

overtime exempt employee; depriving Plaintiff of owed expenses; and retaliating against Plaintiff subsequent to her internal wage complaints.

## PARTIES AND JURISDICTION

3. Plaintiff is an individual residing in Cadillac, Michigan, which is located in Wexford County.

4. Defendant is a company with its headquarters and principal place of business in Milwaukee, Wisconsin, which is located in Milwaukee County.

5. Defendant has a resident agent located in Plymouth, Michigan, which is located in Wayne County.

6. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff brings her claim pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

7. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the events giving rise to Plaintiff's claims took place and where Defendant regularly conducts business.

## GENERAL ALLEGATIONS

8. Defendant is a for-profit U.S. based company that operates a remote office in Cadillac, Michigan.

9. At all times relevant to this Complaint, Plaintiff was employed by Defendant as a "Recruiter" and designated as exempt from overtime.

10. Plaintiff was responsible for recruiting temporary workers for Defendant's staffing needs and performing an array of tasks at the Company's remote office location in Cadillac, Michigan.

11. Plaintiff did not qualify for the FLSA's administrative exemption because she did not exercise discretion and independent judgement with respect to matters of significance.

12. Recruiters utilize a standardized online questionnaire to perform the onboarding of employees.

13. The Recruiter position does not involve managing employees.

14. Plaintiff lacked authority to discipline or fire employees.

15. Plaintiff lacked authority to make final hiring decisions.

16. The work performed by Plaintiff renders her non-exempt from the overtime pay requirements of the FLSA.

17. Plaintiff worked diligently for Defendant outside of normal business hours.

18. Plaintiff consistently and regularly worked more than forty (40) hours per week but was not compensated for her overtime work by Defendant.

19. Plaintiff estimates having performed hundreds of hours of overtime work between her August 2019 hiring and her termination on December 2, 2020.

20. Plaintiff relocated work supplies in Defendant's office to her home residence over a three-week period on nights and weekends at the outset of the pandemic.

21. Plaintiff's supervisor, Carrie Hartman, instructed Plaintiff to perform the duties outside the scope of the Recruiter position.

22. Ms. Hartman directed Plaintiff to reconstruct Defendant's electronic filing system and oversee the drug testing of employees.

23. Under Ms. Hartman's instruction, Plaintiff was obligated to drive to the sites of Defendant's clients to drug test employees suspected of using illegal drugs or violating Defendant's drug-use policies.

24. Employees who tested positive often yelled and became irate with Plaintiff.

25. Plaintiff felt her safety was at risk.

26. Plaintiff spent approximately $500 a month on travel expenses to various sites, which occurred outside of working hours.

27. Defendant did not reimburse Plaintiff for any of her travel expenses.

28. When employees were injured at the location of Defendant's clients, Ms. Hartman told Plaintiff to travel to the site and assess the injury.

29. Ms. Hartman frequently asked Plaintiff to drive injured employees to the hospital.

30. Plaintiff's responsibilities of managing other employees were outside the scope of the Recruiter position and at the direction of Ms. Hartman.

31. When the pandemic started, Plaintiff worked excessive hours helping clients handle new COVID-19 protocols.

32. Plaintiff communicated with over 200 of Defendant's staffing employees to end assignments at the outset of the pandemic.

33. Plaintiff spent excessive hours providing information to the unemployment insurance agency during the COVID-19 pandemic.

34. Plaintiff had to work extra hours to make up for the deficiencies of her colleague from March 16, 2020, to July 22, 2020.

35. Defendant terminated Plaintiff's colleague after an altercation between the colleague and Plaintiff.

36. However, Plaintiff's colleague was not replaced, so Plaintiff's job duties only increased.

37. From April 11, 2020 thru June 19, 2020, Plaintiff was "furloughed" by the Defendant and only paid for 32 hours of work per week.

38. Plaintiff was told at this time that she would not have to work on Fridays.

39. During the "furlough," Plaintiff still consistently worked more than 40 hours per week and on Fridays.

40. Accordingly, Plaintiff was not paid either base pay or overtime pay during the "furlough" period.

41. Plaintiff's work on Fridays is demonstrated in (a) Defendant's emails; (b) text messages; and (c) communications with her supervisor.

42. As a result of Defendant misclassifying Plaintiff as an exempt employee, Plaintiff was unlawfully deprived of overtime compensation for all hours worked in excess of forty (40) per week.

43. On September 22, 2020, after months without overtime compensation, Plaintiff placed a request for an accounting of her hours since March 2020.

44. The same day, September 22, 2020, Regional Vice President Melanie Madduk emailed Plaintiff acknowledging that she conveyed concerns of unpaid overtime to her superiors, including Ms. Madduk and Hiring Manager Cari Hartman.

45. Defendant informed Plaintiff that her hours were not being tracked and directed her to request "activity logs" of the hours she worked overtime.

46. Plaintiff requested the "activity logs" accounting for her overtime hours, but she was denied access to them..

47. Defendant communicated its refusal to turn over Plaintiff's overtime hours in a series of Microsoft Teams messages.

48. In fact, Plaintiff was informed that it was "not possible to pull the logs."

49. On October 12, 2020, shortly after Plaintiff reported her unpaid overtime hours, she was placed on a "Performance Expectation Plan."

50. On December 2, 2020, Defendant terminated Plaintiff's employment.

51. Defendant's proffered reason for Plaintiff's termination was that Plaintiff did not report her overtime hours, which was undocumented prior to her protected conduct.

52. Defendant's proffered reason for Plaintiff's termination is the very same topic that Plaintiff complained about to Defendant, making Defendant's termination per se unlawful under the FLSA's anti-retaliation provision.

53. The close temporal proximity between Plaintiff's FLSA complaints and her subsequent termination also raises a presumption that Defendant terminated Plaintiff in violation of the FLSA's anti-retaliation provision.

54. Had Plaintiff not complained about her unpaid overtime wages, she would not have been placed on a Performance Expectation Plan or terminated by Defendant.

55. Plaintiff's termination left her emotionally distraught and financially ruined.

56. Plaintiff was forced to sell her home to avoid bank foreclosure.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA)
## (UNPAID OVERTIME WAGES)

57. Plaintiff hereby realleges and incorporates by reference all previously stated allegations.

58. At all times relevant to this Complaint, Plaintiff was Defendant's employee within the meaning of the FLSA, 29 U.S.C. § 201 *et seq.*

59. At all times relevant to this Complaint, Defendant was Plaintiff's employer within the meaning of the FLSA.

60. At all times relevant to this Complaint, Defendant has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.

61. Defendant violated the FLSA when it misclassified Plaintiff as exempt from overtime and failed to pay Plaintiff proper overtime compensation for hours worked in excess of forty (40) per week.

62. Defendant's conduct in this regard was a willful violation of the FLSA.

63. As a result of Defendant's unlawful acts, Plaintiff was deprived of earned wages in amounts to be determined at trial. She is entitled to compensation for unpaid overtime wages, interest, liquidated damages, attorneys' fees and costs, and any other remedies available at law or in equity.

## COUNT II
## VIOLATION OF THE FLSA
## (RETALIATION)

64. Plaintiff hereby realleges and incorporates by reference all previously stated allegations.

65. Section 15(a)(3) of the FLSA states that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

66. Plaintiff engaged in protected conduct when on September 22, 2020, Plaintiff, submitted a request for an accounting of her hours after not receiving overtime pay from Defendant Company.

67. An email sent by Ms. Maddux at the time of Plaintiff's initial complaint shows that the reasons given for Plaintiff's later termination were pretextual.

68. On October 12, 2020, less than one month after submitting her FLSA violation concerns, Plaintiff suffered an adverse employment action in the form of a Performance Expectation Plan instituted by Defendant in retaliation for requesting compensation for overtime worked.

69. On December 2, 2020, following internal communications in which the Company communicated its refusal to reconcile pay for the overtime hours, Plaintiff was terminated by Defendant in retaliation for her complaints about unpaid overtime.

70. Defendant's decision to terminate Plaintiff was motivated by Plaintiff's opposition to Defendant's FLSA violations.

71. Had Plaintiff not complained about the FLSA violations, she would not have been disciplined or subsequently terminated.

72. Plaintiff is entitled to lost wages, lost benefits, liquidated damages, extreme mental and emotional distress, humiliation, outrage, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive damages, interest, attorneys' fees and costs, and any other remedies available at law or in equity.

## COUNT III
## VIOLATION OF THE FLSA
## (UNPAID EXPENSES)

73. Plaintiff hereby realleges and incorporates by reference all previously stated allegations.

74. 29 C.F.R. 778.217(a) provides:

Where an employee incurs expenses on his employer's behalf or where he is required to expend sums by reason of action taken for the convenience of his employer, section 7(e)(2) is applicable to reimbursement for such expenses.

75. Pursuant to 29 C.F.R. 778.217, Defendant was required to compensate Plaintiff where she was "required to expend sums of money solely by reason of action taken for the convenience of [her] employer."

76. After terminating Plaintiff's employment, Defendant refused to reimburse Plaintiff for her such expenses.

77. As a direct of Defendants' unlawful conduct, Plaintiff has suffered ruinous financial losses as described herein.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff claims as follows:

    a.    An award of unpaid overtime wages under the FLSA.

    b.    An award of liquidated damages under the FLSA.

    c.    Interest;

    d.    Attorneys' fees and costs under the FLSA; and

    e.    Such other relief as in law or equity may pertain.

Respectfully Submitted,

/s/ *Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9479

Dated: February 16, 2022

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| ALEXANDRIA (SIAN) WRIGHT, | Case No. |
| Plaintiff, | Hon. |
| v. | |
| MANPOWERGROUP US INC., | |
| Defendant. | |

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (PP85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com
Kara@hurwitzlaw.com

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff Alexandria (Sian) Wright, by and through her attorneys, HURWITZ LAW PLLC hereby demand a jury trial in the above-captioned matter for all issues so triable.

Respectfully Submitted,

/s/ *Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9479

Dated: February 16, 2022

10